The ESTATES of Deborah Marie TOBIN, and Alyssa Ann Tobin, Deceased by Timothy John TOBIN, Personal Representative; and the Estates of Donald Jack Schell, and Rita Charlotte Schell, Deceased, by Neva Kay Hardy, Personal Representative, Plaintiffs,

v.

SMITHKLINE BEECHAM PHARMACEUTICALS, Defendant.

No. 00CV025.

United States District Court, D. Wyoming.

Aug. 9, 2001.

James E. Fitzgerald, A.G. McClintock, Fitzgerald Law Offices, Cheyenne, WY, Paul F. Waldner, III, Andy Vickery, Richard W. Ewing, Vickery & Waldner, Houston, TX, for plaintiffs.

Thomas A. Nicholas, III, Thomas G. Gorman, Melissa E. Westby, Ryan T. Schelhaas, Hirst & Applegate, Cheyenne, WY, Daniel W. Whitney, Ronald V. Miller, Jr., George D. Bogris, Whitney & Bogris, Towson, MD, Charles F. Preuss, Vernon I.

Zvoleff, Preuss Shanagher Avoleff & Aimmer, San Francisco, CA, Tamar P. Halpern, Phillips Lytle Hitchcock Blaine & Huber, Buffalo, NY, for defendant.

### ORDER DENYING SMITHKLINE BEECHAM CORPORATION'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR FOR A NEW TRIAL

BEAMAN, United States Magistrate Judge.

The above-entitled matter having come on regularly for hearing before the Court on SmithKline Beecham Corporation's Motion for Judgment as a Matter of Law or For a New Trial filed herein, the plaintiffs appearing by and through their counsel Andy Vickery and James E. Fitzgerald, and the defendant appearing by and through its counsel Vernon I. Zvoleff, Tamar P. Halpern, and Thomas G. Gorman; and the Court having heard the arguments of counsel in support of and in opposition to said motion, having fully and carefully reviewed and considered the motion and briefs filed therewith, and all matters pertinent thereto, and being fully advised in the premises FINDS:

Currently before the Court is the defendant's motion for a judgment as a matter of law, notwithstanding the verdict, or, in the alternative, a motion for a new trial. The defendant sets forth four arguments in support of its motion and contends that it is entitled to either a new trial in this matter or the entry of a judgment as a matter of law.

#### Background

This action originally comes before the Court on the plaintiffs' claims for product liability, pursuant to section 402A of the Second Restatement of Torts, negligent failure to warn, negligent misrepresentation, and negligent failure to test and investigate. This Court has jurisdiction over this matter pursuant to 28 U.S.C. section 1332. The plaintiffs allege decedent Donald Schell shot and killed his wife, decedent Rita Schell, his daughter, decedent Deborah Marie Schell Tobin, and his granddaughter, decedent Alyssa Ann Tobin, before killing himself, as a direct result of his ingestion of Paxil, a pharmaceutical drug manufactured and distributed by the defendant. Trial in this matter began on May 21, 2001, before a jury of eight. On June 5, 2001, the Court dismissed as a matter of law the plaintiffs' claim for negligent misrepresentation under § 402B of the Restatement of Torts. The jury began deliberations on June 5, 2001, and on June 6, 2001, returned a verdict in favor of the plaintiffs. On June 6, 2001, the Court entered a judgment in excess of six million dollars in favor of the plaintiffs in accordance with the verdict entered by the jury. On June 20, 2001, the defendant timely filed the instant motion for a judgement as a matter of law or, in the alternative, for a new trial.

#### Arguments

##### A. Defendant

The defendant argues that the judgment should be set aside as a matter or law or that it is entitled to a new trial based on errors committed by the Court before and during the trial in this matter. The defendant's primary contention is that "there is simply no reliable scientific basis for the conclusion that Paxil can cause suicide and homicide." (*See* SKB's Memo in Support of Judgment as a Matter of Law, page 2). The defendant makes the following specific arguments in support of their motion.

1. Jury's Verdict is not Supported by Reliable Scientific Evidence

The defendant first argues, essentially reasserting the arguments made in its pretrial *Daubert* motion, that there is no legally relevant and reliable evidence to support the allegations made by the plaintiffs'

expert witnesses Drs. Healy and Maltsburger. The defendant argues that the opinions of the plaintiffs' experts were improperly based on case reports and unreliable scientific studies which cannot reliably be used to demonstrate causation or otherwise support the opinions of the plaintiffs' experts. The defendant also alleges that Dr. Healy's testimony demonstrates that he has become a advocate instead of a valid scientist. (*See* SKB's Memo in Support of Judgment as a Matter of Law, pages 4–9). Finally, the defendant contends that the testimony of Dr. Maltsburger was improper since it went beyond his Rule 26 designation. (*See* Memo in Support of Judgment as a Matter of Law, pages 9–10).

2. There is no evidence that the absence of warnings proximately caused the murders and suicide in this case.

Second, the defendant argues that Dr. Patel's testimony fails to demonstrate that the defendant's failure to warn was the proximate cause of the injuries alleged in this litigation. The defendant simply asserts that the testimony offered by Dr. Patel fails to demonstrate that, had a warning been given, Dr. Patel would not have prescribed Paxil for Donald Schell. The defendant asserts that in the absence of such testimony, the jury's verdict cannot be supported and should be set aside as a matter or law. (*See* SKB's Memo in Support of Judgment as a Matter of Law, pages 11–14).

3. The Jury Instructions Failed to Advise the Jury of the Necessary Elements of the Plaintiffs' Claims.

The defendant asserts that the instructions given by the Court, as a whole, misstate the law by implying that the plaintiffs were not required to prove general causation to prevail on the merits of this case. The defendant contends that the instructions as a whole fail to state that the jury must find that a product is defective before finding that the warnings provided with it were inadequate.

The defendant also contends that the Court's instructions regarding unavoidably unsafe products were unduly prejudicial to the defendant. (*See* SKB's Memo in Support of Judgment as a Matter of Law, pages 14–16). Further, the defendant argues that the Court should not have instructed the defendant on comparative fault, since Paxil is either defective or it is not. Finally, the defendant argues that the Court's verdict form was improper since it did not require the jury to determine that the product was defective. (*See* SKB's Memo in Support of Judgment as a Matter of Law, pages 17–18).

4. Prejudicial Evidentiary Rulings

Finally, the defendant contends that several of the Court's evidentiary rulings warrant a new trial in this matter since said rulings unduly prejudiced the defendant. Specifically, the defendant objects to: (1) the admission of the German warning labels; (2) the admission of Ms. Dean's testimony concerning Don Schell's alleged hallucinations while taking Prozac years earlier; (3) the admission of any and all evidence concerning Eli Lilly, Prozac, or other SSRIs; and (4) the admission of deposition rebuttal testimony from Dr. Wheadon. (*See* SKB's Memo in Support of Judgment as a Matter of Law, pages 18–21).

**B. Plaintiffs**

The plaintiffs oppose the motion for a judgment as a matter of law or for a new trial and, generally, argue that the Court conducted a text-book perfect trial in all respects. The plaintiffs argue that the evidence was more than sufficient to substantiate the verdict and that the majority

of the defendant's arguments regarding sufficiency of the evidence is merely an attempt by the defendant to reargue its *Daubert* motion. (*See* Plaintiffs' Response, pages 2–4). The plaintiffs argue that the reliability of their experts, after the Court's ruling on the *Daubert* motion is merely a matter for the jury to decide. The plaintiffs further argue that the jury instructions were fair and that they properly informed the jury of the law of the case. (*See* Plaintiffs' Response, pages 4–5). The plaintiffs argue that the Court properly instructed the jury regarding general causation and that the Court properly submitted the case to the jury on comparative fault. Finally, the plaintiffs assert, without substantial argumentation, that the Court's evidentiary rulings were fair and complete. (*See* Plaintiffs' Response, page 6).

### Analysis

### A. Standard of Review

Rule 50 of the Federal Rules of Civil Procedure states:

> If during a trial by a jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for a judgment as a matter of law against that party with respect to a claim or defense that cannot under controlling law be maintained or defeated without a favorable finding on that issue. FED.R.CIV.P. 50(a)(1).

Rule 50 states with regard to renewed motions for a judgment after the trial that:

> If, for any reason, the court does not grant a motion for judgment as matter of law made at the close of all the evidence, the court is considered to have submitted the action to jury subject to the court's later deciding the legal questions raised by the motion. The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment—and may alternatively request a new trial or join a motion for a new trial under Rule 59. FED.R.CIV.P. 50(b).

In ruling on a renewed motion for a judgment as a matter of law when a verdict has been returned, the Court may allow the judgment to stand, order a new trial, or direct entry of judgment as a matter of law. FED.R.CIV.P. 50.

■ A judgment as a matter of law is appropriate "if after a party has been fully heard on an issue, there is no legally sufficient evidentiary basis for a reasonable jury to find for a party...." The trial court should not "lightly presume the decision of a reasonable juror, judgment 'may be granted only if the evidence point but one way and is susceptible to no reasonable inference which may support the opposing party's position.'" *Turnbull v. Topeka State Hospital*, 255 F.3d 1238, 1239 (10th Cir.2001) (quoting *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 796 (10th Cir.2001)). In a diversity case, the substantive law of the forum state governs the analysis of the underlying claims, including specification of the applicable standards of proof, but federal law controls the ultimate, procedural question of whether judgment as a matter of law is appropriate. *Oja v. Howmedica, Inc.*, 111 F.3d 782, 792 (10th Cir.1997). In its review, the Court should not weigh the evidence, pass on the credibility of witnesses, or substitute its judgment for that of the jury. *Pizza Hut v. Lockard*, 162 F.3d 1062, 1068. (10th Cir.1998). Instead, the Court should construe all evidence and the inferences therefrom in the light most favorable to the non-moving party. *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 796 (10th Cir.2001); *Kinser v. Gehl Co.*, 184 F.3d 1259, 1267 (10th Cir.1999).

## B. The Jury's Verdict was Supported by Reliable Scientific Evidence

This Court finds that its initial ruling on the defendant's *Daubert* motion that: "Dr Healy's education, experience, training, and extensive research regarding SSRIs, serotonin, and depression, qualify him to offer expert testimony with regard to general causation in this litigation," was supported by the testimony presented at trial. *See* Order Denying Defendant SmithKline Beecham Corporation's Motion to Exclude or Limit the Testimony of Plaintiff's Experts, May 3, 2001. In *Daubert*, the United States Supreme Court held that the Federal Rules of Evidence require the trial court to ensure that any scientific testimony under Rule 702 is "not only relevant, but reliable." *Smith v. Ingersoll–Rand Co.*, 214 F.3d 1235, 1243 (10th Cir.2000) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)). The Supreme Court of the United States held in *Kumho* that the trial court's gatekeeping function is a flexible and commonsense undertaking in which the trial judge is granted "broad latitude" in deciding both how to determine reliability as well as in the ultimate decision of whether the testimony is reliable. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141–42, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

> The purpose of the *Daubert* gatekeeping function is not to measure every aspect by an inflexible set of criteria but to undertake whatever inquiry is necessary to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Smith v. Ingersoll–Rand Co.*, 214 F.3d at 1243 (quoting *Kumho*, 526 U.S. at 152, 119 S.Ct. 1167).

■ The Court finds nothing in its review of the trial evidence which merits a judgment as a matter of law on this point. As noted above, a judgment as a matter of law is appropriate "only if the evidence points but one way and is susceptible to no reasonable inference which may support the opposing party's position." *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 796 (10th Cir.2001). When construing the evidence in the light most favorable to the non-moving party, this Court finds that a reasonable jury could find that Paxil caused the damages suffered by the plaintiff. Although both parties presented evidence through relevant and reliable experts, when construed in the light most favorable to the plaintiffs, the Court finds that the testimony of Dr. Healy supports a reasonable jury verdict for the plaintiffs. Specifically, Dr. Healy testified that Paxil can cause some patients to become homicidal or suicidal. (*See* Trial Transcript, Volume II page 218, line 19 through Page 219 line 11; Volume II, page 253, line 2–21). Dr. Healy based his testimony regarding general causation on his own clinical experience, on his review of the healthy volunteer data gathered by the defendant, and his review of published scientific works including the Donovan article, the Montgomery study, and a study conducted by Dr. Baldwin. Dr. Healy further presented specific testimony regarding the temporal association between Paxil, and other SSRIs, and the onset of agitation. While the Court agrees that a temporal association alone is not sufficient to demonstrate causation, the testimony with regard to temporality in conjunction with Dr. Healy's other testimony was appropriate and reasonably supports the jury's verdict. Dr. Healy's testimony, when considered in a light most favorable to the plaintiffs, is sufficient to support the jury's verdict, despite the contrary evidence, testimony, and arguments presented by the defendant.

Further, the Court notes that Dr. Healy gave very specific testimony with regard to specific causation. Dr. Healy stated at one point during the trial that "I believe that if Mr. Schell didn't have the Paxil that he had been given that he would be alive today and so would his family." (*See* Trial Transcript, Volume II page 220, line 25 through Page 221 line 2). Dr. Healy based his opinion upon his review of Donald Schell's medical records and the fact that Mr. Schell had encountered problems with anxiety when he has been prescribed Prozac, another SSRI drug, in the past. Dr. Healy testified that these factors together led him to believe that Donald Schell was a member of a class of persons who suffer from a severe reaction to SSRIs like Paxil and, therefore, his ingestion of Paxil was the specific cause of his homicidal and suicidal behavior. While it can be argued that the weight of the defendant's scientific evidence and theories was greater than the weight of the evidence and theories presented by the plaintiffs, nevertheless, the plaintiffs' evidence, if believed by the jury, was of sufficient weight to support its conclusions. This Court finds that Dr. Healy also presented evidence which a reasonable jury could have concluded that Paxil induced a state of heightened agitation which would eventually cause a person to become homicidal or suicidal. (*See* Trial Transcript, Volume II page 252, line 23 through page 253, line 21). While the defendant also presented compelling contrary testimony, a reasonable jury could, and apparently did, find the testimony of Dr. Healy was deserving of greater deference.

Further, the Court does not find that Dr. Healy's opinions are simply unsupported hypothesis. Both parties in this litigation presented competent experts to testify, but the jury found Paxil to be partially responsible for the death of Donald and Rita Schell and Deborah and Alyssa Tobin.[1] The plaintiffs attempted to demonstrate the existence of a "small vulnerable population" with the testimony of Dr. Healy and Dr. Maltsberger and through vigorous cross examination of Dr. Weadon and Dr. Mann. This testimony was presented through questions regarding the experts' opinions as well as through discussions of the published literature. The Court finds the fact that Dr. Healy referenced other SSRIs, or articles concerning other SSRIs, does not invalidate the opinions he presented at trial. As the Court explained in its previous rulings, there are sufficient similarities between the various SSRIs which warrants discussion regarding the drugs on a class wide basis. Further, Drs. Weadon, Mann, and Merrell all referred to the class of SSRIs in general terms and explained that while there are significant differences between the various SSRIs, they do share the common trait of reducing the reuptake of serotonin in the brain. Further, as this Court stated in its order ruling on the defendant's *Daubert* motion, the differences between the various SSRIs and Paxil and the appropriateness of comparing drawing inferences regarding Paxil from research on other SSRIs, is appropriately left for the presentation of contrary evidence and vigorous cross examination. *See Daubert,* 509 U.S. at 595, 113 S.Ct. 2786. As the Court noted in its first *Daubert* ruling in this case, "*Daubert* neither requires nor empowers trial courts to determine which of several competing scientific theories has the best provenance." *Ruiz–Troche v. Pepsi Cola,* 161 F.3d 77, 85 (1st Cir.1998).

---

1. The Court uses the term "partially responsible" since the jury determined that the defendant was 80% responsible for the plaintiffs' injuries and that Donald Schell was 20% at fault.

■ This Court additionally finds that whether Dr. Healy has become more of an advocate than a scientist to be an issue of credibility for the jury to determine.[2] As the Court stated in its ruling on the defendant's original *Daubert* motion, Dr. Healy's testimony meets the minimum requirements for admissibility under Rule 702 of the Federal Rules of Evidence. This Court does not find that the jury's verdict should be taken away merely on this point. *Daubert* and *Kumho* require the Court to ensure that experts testifying in the courtroom employ "the same level of intellectual rigor" that the expert would use outside the courtroom when working in the relevant discipline. *Kumho*, 526 U.S. at 152, 119 S.Ct. 1167. The Court finds that the defendant properly cross-examined Dr. Healy with regard to these seeming variations in his opinions and that Dr. Healy presented an explanation which a reasonable jury could accept given the evidence viewed in the light most favorable to the plaintiffs.

■ The defendant argues that Dr. Healy was allowed to offer testimony beyond that outlined in his Rule 26 designation. The Court notes that it sustained, or the plaintiffs' counsel voluntarily withdrew the question, as to eleven of the approximately twelve objections made by the defendant's counsel regarding the scope of Dr. Healy's testimony. The only objection the Court specifically overruled concerned the dose-response relationship of Paxil compared to other SSRIs. (*See* Trial Transcript, Volume II, page 273, line 3 through page 274, Line 2). With regard to this objection, the Court notes that Dr. Healy's Rule 26 designation does contain references and statements regarding dose-relationships of both Paxil and Prozac. However, to the extent that Dr. Healy's testimony could be viewed as extending

beyond his Rule 26 designation, the United States Court of Appeals for the Tenth Circuit utilizes a four factor test to determine whether the trial court abused its discretion in admitting expert testimony. These factors include: (1) the prejudice or surprise in fact of the party; (2) the ability of that party to cure the prejudice; (3) the extent to which the Rule 26 violation would disrupt the orderly and efficient trial of the case; and (4) the bad faith or willfulness in failing to comply with Rule 26. *Nalder v. West Park Hospital*, 254 F.3d 1168, 1177–78 (10th Cir.2001) (quoting *Smith v. Ford Motor Co.*, 626 F.2d 784, 797 (10th Cir.1980)). With regard to the first factor, the Tenth Circuit recently held that "when a party requests a new trial on the basis of surprise testimony *it must* be able to show surprise, prejudice, and an attempt to cure the prejudice such as a motion for a continuance." *Hynes v. Energy W., Inc.*, 211 F.3d 1193, 1203 (10th Cir.2000). At no time during the trial did the defendant request a continuance on the basis of surprise or prejudice. Further, the Court notes that Dr. Healy was extensively questioned regarding his opinions concerning a dose-response relationship during his deposition for this case, as is demonstrated by defense counsel's cross examination of Dr. Healy. Given the defendant's preparedness to cross examine Dr. Healy, the defendant lacks justification to reasonably argue that it was surprised by any of Dr. Healy's testimony. The record before the Court demonstrates that the defendant was well aware of Dr. Healy's opinions regarding this case. Further, given the fact that this Court finds no surprise to the defendant, and given the fact that the defendant did not seek a continuance, this Court is not presented

---

2. This is especially true in cases such as this where the Court already determined that his

testimony was relevant and reliable under *Daubert* and the Federal Rules of Evidence.

that the defendant was, in any way, prejudiced by Dr. Healy's testimony.

Factors two and three are related in this case since the defendant made little or no attempt to cure its alleged prejudice and since an attempt to do so would not have disrupted the orderly and efficient trial of the case. As stated above, the defendant did not seek a continuance during the trial in order to allow the defendant time to cure the prejudice it allegedly suffered as a result of Dr. Healy's contested testimony. Further, the Court notes that the defendant was prepared to extensively cross-examine Dr. Healy concerning seeming discrepancies between his deposition testimony and the testimony he offered at trial. (*See* Trial Transcript, Volume II, page 297, line 5 through page 299, Line 5). Finally, the Court finds that the trial in this case would not have been significantly disrupted had the defendant attempted to cure its alleged prejudice in another manner. The Court notes that the defendant was vigilant in objecting to Dr. Healy's testimony when appropriate. The Court also notes that it conducted numerous discussions in chambers with the parties during this trial, allowing each side more than ample opportunities to bring their objections and concerns to the attention of the Court outside the presence of the jury. The defendant could easily have brought their concerns to the attention of the Court without disrupting the trial in this matter. Finally, the Court does not find, nor does the defendant argue, that Dr. Healy's testimony was motivated by any bad faith or ill intent. Rather, it appears that Dr. Healy was simply an impassioned witness who arguably may have been over-responsive to the questions posed by counsel. This Court's review of the factors listed above demonstrate that the defendant is not entitled to a new trial on this basis.

Next, the defendant contends that the plaintiffs' expert, Dr. Maltsberger, offered testimony beyond his Rule 26 designation. While the Court allowed him to testify regarding a general causation article, it is tenuous to suggest that Dr. Maltsberger was allowed to extensively testify regarding general causation. Rather, it appears that the Court sustained, or plaintiffs' counsel withdrew his question, each time the witness offered testimony which the defendant believed went beyond Dr. Maltsberger's Rule 26 designation. However, with regard to the defendant's claim that they were prejudiced by Dr. Maltsberger's testimony, the Court will apply the same factors listed above. First, the Court finds that it is difficult for the parties to argue surprise regarding Dr. Maltsberger's testimony since the parties stipulated to limiting his testimony to the issue of specific causation. Clearly, since the parties entered into a stipulation regarding the nature and scope of Dr. Maltsberger's proposed testimony, the defendant was aware of the nature of his overall opinion. This Court's review of the entirety of Dr. Maltsberger's testimony demonstrates that the defendant was not surprised by his testimony, if it actually went beyond his designation, and that, instead, the defendant acted conscientiously at trial to confine Dr. Maltsberger's testimony to the issue of specific causation. Second, the defendant did not seek a continuance or in any other manner attempt to cure the alleged prejudice it allegedly encountered. As stated above, the Court provided both parties ample opportunities to have their concerns addressed outside the presence of the jury in a manner which would not have interfered with the orderly conducting of the trial. Finally, once again, the Court finds that if there was an admission of testimony beyond Dr. Maltsburger's Rule 26 designation was not motivated by bad faith and, more importantly, was not prejudicial to the defendant.

## C. Warnings and Proximate Cause of the Murder Suicide

The defendant argues that the plaintiffs failed to demonstrate that the absence of warnings on the Paxil label was the proximate cause of the murder/suicide in this case. Thus, the defendant contends that no reasonable juror could have found for the plaintiffs on their theory of negligent failure to warn under the law of strict products liability. As stated above, Rule 50 of the Federal Rules of Civil Procedure allows a trial judge to grant a judgment of law "if, after a party has been fully heard on an issue, there is no legally sufficient evidentiary basis for a reasonable jury to find for the party...." FED.R.CIV.P. 50. As directed by the United States Court of Appeals for the Tenth Circuit, this Court will not lightly presume the decision of a reasonable juror, and a judgment as a matter of law should be "granted only if the evidence points but one way and is susceptible to no reasonable interferences which may support the opposing party's position." *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790 796 (10th Cir.2001). "Thus, when a defendant seeks judgment as a matter of law, the controlling question is whether the plaintiff has arguably proven a legally sufficient claim." *Turnbull v. Topeka State Hospital*, 255 F.3d 1238, 1239 (10th Cir.2001). This Court finds, when reviewing the "facts and all reasonable inferences from them ... in the light most favorable to the" non-moving party, that the judgment for the plaintiffs is supported by sufficient evidence for this Court not to replace the jury's decision with its own. *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 796 (10th Cir.2001); *Kinser v. Gehl Co.*, 184 F.3d 1259, 1267 (10th Cir. 1999); *Pizza Hut v. Lockard*, 162 F.3d 1062, 1068 (10th Cir.1998). As will be discussed *infra*, the Court finds that the jury was properly instructed with regard to general and specific causation and, therefore, this Court must have faith in the jury's verdict in the absence of a demonstration by the defendant that the plaintiffs' have failed to demonstrate a legally sufficient claim. Although the defendant argues that Dr. Patel's testimony does not support the jury's verdict in this case, the court disagrees. This Court finds that Dr. Patel's testimony was sufficient to allow a reasonable jury to conclude that if Paxil contained a warning regarding homicide and suicide, his prescribing decision may have been different. When viewed in the light most favorable to the plaintiffs, the Court finds that the jury could have reasonably determined from all the evidence that the defendant's product contained an inadequate or improper warning.

## D. The Jury Instructions Properly Advised the Jury of the Necessary Elements of the Plaintiffs' Claim

This Court finds that the jury instructions as a whole do not imply that the plaintiffs were not required to prove general causation in order to prevail on the merits of their claims. Jury Instruction Number 25 and Instruction Number 38 clearly instruct the jury that plaintiffs are required to demonstrate both general and specific causation before they could find for the plaintiff on either of their claims. Instruction 25 stated in its entirety that:

> In order to prove the essential elements of plaintiffs' claim for negligent failure to test, the burden is on the plaintiffs to establish, by a preponderance of the evidence in this case, the following facts:
>
> (1) That Paxil can cause some individuals to commit homicide and/or suicide; and,
>
> (2) That Paxil was a proximate cause of Donald Schell committing the homicides and suicide involved in this litigation; and,
>
> (3) That SmithKline Beecham knew, or should have known, that Paxil

can cause some individuals to commit homicide and/or suicide and that the defendant failed to make such tests as are reasonably necessary to determine the presence of any defects which render Paxil unsafe for its intended use or for any reasonably foreseeable uses;

(4) That the negligent failure to test was a proximate cause of the homicides and suicide in this litigation; and,

(5) The elements of the plaintiffs' damages and the amount thereof.

Similarly, Instruction Number 38 stated that:

In order to prove the essential elements of plaintiffs' claim for strict product liability, the burden is on the plaintiffs to establish, by a preponderance of the evidence in this case, the following facts:

(1) That Paxil can cause some individuals to commit homicide and/or suicide; and,

(2) That Paxil was a proximate cause of Donald Schell committing the homicides and suicide involved in this litigation; and,

(3) That SmithKline Beecham knew, or should have known, that Paxil can cause some individuals to commit homicide and/or suicide and failed to adequately warn of this alleged causal connection; and

(4) That the failure to warn was a proximate cause of the homicides and suicide in this litigation; and,

(5) The elements of the plaintiffs' damages and the amount thereof.

■ The Court finds that these two instructions, especially when read in conjunction with the Court's other instructions, adequately informed the jury that they were required to find both general and specific causation in order for the plaintiffs to recover on either of their claims.

■ Second, the Court finds that the defendant was not unduly prejudiced by the Court's instructions regarding "unavoidably unsafe" products. The term "unavoidably unsafe" products simply refers to that area of the law regarding those products, such as pharmaceutical drugs, which despite the manufacturers best efforts and intentions contain an unavoidable risk. *See* RESTATEMENT (Second) OF TORTS § 402A cmt. k (1965). The Court instructed the jury that despite this inherent possibility for risk, the products are ultimately beneficial. Specifically, Instruction Number 33 stated: "Sometimes a product cannot be made reasonably safe, but it is nevertheless desirable that the product be manufactured and distributed because of its utility. In such cases, it is the obligation of the manufacturer to give appropriate warnings of any dangerous condition which is likely to be encountered." The Court further instructed the jury that the seller of such products is immune from liability for the inherent risks of such products so long as they are properly prepared, marketed, and that appropriate warnings are given. RESTATEMENT (Second) OF TORTS § 402A cmt. k (1965). Specifically, Jury Instruction Number 32 states "A defective product can include a product which has an inadequate or improper warning in the instructions or the label fails to include warnings reasonably necessary for the product's safe use. The law of strict product liability requires a manufacturer to warn consumers of a danger associated with the use of its product to the extent the manufacturer knew or should have known of the danger." Similarly, Instruction Number 34 states "A warning is adequate if it reasonably discloses all inherent risks and enables a prescribing physician to weigh the benefits of a drug's use against the attendant risk." Finally, Instruction 35 states:

The defendant is required to warn of those adverse effects of which it knows or by the exercise of ordinary care should know, is potentially dangerous to users of that product, and has a duty to exercise reasonable care in giving an adequate warning of such dangers. Under the law, the manufacturer is required to describe in its labeling any serious adverse reactions and potential safety hazards. *However, the manufacturer is not required to warn of unknown or unforeseeable risks, or a risk which is not supported by reasonable evidence.* (emphasis added).

After reviewing the trial transcripts and the submitted jury instructions, the Court finds that the referenced instructions were proper and that the defendant was not unduly prejudiced thereby.

▮▮▮ The Court further finds defendant's arguments regarding comparative fault unpersuasive. The defendant contends, without authority or support, that a product cannot be comparatively at fault for the deaths implicated in this litigation. Instead, the defendant contends that a product is either defective or not. While this may be the defendant's theory of the case, said theory is not grounded in Wyoming law. Wyoming Statute section 1–1–109 clearly states that products liability cases are to be submitted to the jury on a comparative fault basis. WYO.STAT.ANN. 1–1–109(a)(iv) (LEXIS 2001).

Further, as the parties are all too aware, the Court initially intended to provide the jury with a detailed verdict form which would have specifically required the jury to make specific findings with regard to general and specific causation. However, although the Court cannot provide the parties with page and line references since a certified copy of the entire transcript is not yet available, the Court's review of the transcript from the jury instruction conference demonstrates that the parties specifi-cally asked the Court for a simplified or general verdict very similar in form to the verdict submitted by the defendant. The parties specifically stated that if the court instructed the jury that they were required to find both specific and general causation with regard to each of the plaintiffs' claims, then they would be satisfied with a verdict form that only asked the jury to determine if the plaintiff had met their burden with regard to general and specific causation. However, the Court will note that there are, at best, only minor differences between the proposed verdict form submitted by the defendant and the verdict form used by the Court.

### E. Prejudicial Evidentiary Rulings

▮▮▮ Finally, the Court will address the defendant's concerns regarding the evidentiary rulings at the trial. The Tenth Circuit generally reviews a district court's determination regarding the admission of evidence for abuse of discretion. *National. Envtl. Ser. Co.*, 256 F.3d at 1001 (citing *Boughton v. Cotter Corp.*, 65 F.3d 823, 832 (10th Cir.1995)). Usually, the Court of Appeals will reverse only if they have a firm and definite belief that the trial court made a clear error in judgment. *Macsenti v. Becker*, 237 F.3d 1223, 1236 (10th Cir. 2001).

With regard to the admission of the German label, this Court reiterates its previous ruling as issued with regard to the defendant's motion in limine. The Court found that the label was highly relevant and that it should be admissible. Further, the Court found that the label was not hearsay since it was not offered to prove the truth of the matter asserted. Finally, the Court specifically found that the admission of the labels did not unduly prejudice the defendant and that the defendant was more than entitled to offer testimony regarding the differences in medical cus-

toms and practices between the United States and Germany.

Second, the Court admitted the testimony of Ms. Dean since the Court found that the testimony only related to the then existing state of mind of a declarant pursuant to Rule 803(3) of the Federal Rules of Evidence. The Court heard the defendant's objection and the arguments of counsel in Court and overruled them. The Court finds no reason to set aside its previous ruling at this time.

Further, the Court found that the admission of Exhibits 39 and 40, which concerned Eli Lilly and Prozac, did not prejudice the defendant. The Court finds that the admission of these exhibits should not have confused the jury or led them to believe that Paxil and Prozac are the exactly same. The defendant put on a substantial amount of testimony from both the plaintiffs' experts and its own that Paxil and Prozac are pharmacologically distinct. This Court is not persuaded by the defendant's arguments to the contrary.

Finally, the Court does not find that the defendant was prejudiced by allowing the plaintiffs to offer rebuttal testimony through Dr. Weadon's deposition. While the testimony read by plaintiffs' counsel may have been somewhat duplicative, it was not sufficiently prejudicial to warrant its exclusion under Rule 403 of the Federal Rules of Evidence. This Court finds now, as it did at the trial, that the testimony was proper rebuttal testimony since it was intended to address testimony presented by the defendants regarding testing.

### Conclusion

This Court finds nothing in its review of the trial in this matter which warrants either a judgment as a matter of law or a new trial. The Court holds that the judgment as entered shall stand.

NOW, THEREFORE, IT IS ORDERED that SmithKline Beecham Corporation's Motion for Judgment as a Matter of Law or For a New Trial be, and the same hereby is, DENIED.